IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRENDA SUE DONLEY,
BRENDA SUE DONLEY, guardian,
next friend and parent of
ALEXANDER DONLEY, a minor and
ALEXANDER DONLEY, in his own right,

      Plaintiffs,

v.                                          Civil Action No. 5:03CV250
                                                         (STAMP)
FREDERICK SCHENK DOEPKEN, JR.

      Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTIONS FOR NEW TRIAL**

I. <u>Background</u>

Plaintiffs, Brenda Sue Donley and Alexander Donley, were involved in an automobile accident with defendant, Frederick Schenk Doepken, Jr., in the parking lot of Oglebay Park in Wheeling, West Virginia. The plaintiffs alleged that they suffered injuries as a result of the accident, and the matter proceeded to a two-day trial beginning on January 11, 2005. Because the defendant admitted fault in the accident, the only questions before the jury involved causation and damages.

Following the closing statements by counsel for the parties and after receiving proposed jury forms from the parties, this Court drafted a verdict form. At a post-trial conference, counsel for both parties were given an opportunity to review the verdict form, to suggest corrections and to raise any objections. After a

few minor changes to the verdict form, the attorneys for both parties declared they had no objections to the form as amended.

This Court then reviewed the verdict form with the jury and instructed them on procedures for completing the form. This Court advised the jury that if they desired to communicate with the Court, they were to provide a written message or question to the court security officer. Before addressing damages as to each plaintiff, the verdict form asked whether the defendant's fault directly and proximately caused injury to Brenda Sue Donley or Alexander Donley, respectively.[1]

---

[1] The verdict form stated as follows:

1. Did the defendant, Frederick Schenk Doepken, Jr.'s, fault directly and proximately cause any injury to the plaintiff, Brenda Sue Donley?

Answer: Yes ☐   No ☐

If your answer to Question 1 is "Yes," proceed to Questions 2 and 3. If your answer to Question 1 is "No," proceed to Question 3.

2. We, the jury, find that the plaintiff, Brenda Sue Donley, is entitled to an award of compensatory damages against the defendant, Frederick Schenk Doepken, Jr., as follows:

| A.   Physician, hospital or other medical expenses incurred in the past | $ _____ |
| B.   Physician, hospital or other medical expenses to be incurred in the future | $ _____ |
| C.   Past physical pain and suffering | $ _____ |
| D.   Future physical pain and suffering | $ _____ |
| E.   Past Loss of enjoyment of life | $ _____ |

While the jury deliberated, and upon the consent of all parties, this action was temporarily assigned to Magistrate Judge James E. Seibert pursuant to 28 U.S.C. §§ 636(b)(3) and (c)(1). While the magistrate judge presided during jury deliberation, the jury requested clarification on whether past medical bills had been paid. The magistrate judge presented the question to both parties in open court, and counsel for both parties were given an

------

| | |
|---|---|
| E.    Future loss of enjoyment of life | $ _____ |
| TOTAL: | $ _____ |

3.    Did the defendant, Frederick Schenk Doepken, Jr.'s, fault directly and proximately cause any injury to the plaintiff, Alexander Donley?
Answer:  Yes ☐    No ☐
If your answer to Question 3 is "Yes," proceed to Question 4.  If your answer to Question 3 is "No," please have your foreperson sign and date the verdict and return to the Courtroom.

4.    We, the jury find that the plaintiff, Alexander Donley (a minor who sues by his guardian, next friend and parent), is entitled to an award of compensatory damages against defendant, Frederick Schenk Doepken, Jr. as follows:

| | |
|---|---|
| A.    Physician, hospital or other medical expenses incurred in the past | $ _____ |
| B.    Past physical pain and suffering | $ _____ |
| C.    Past mental pain and suffering | $ _____ |
| D.    Past loss of parental consortium | $ _____ |
| TOTAL: | $ _____ |

opportunity to suggest an appropriate response. The magistrate judge adapted the suggestions of counsel and proposed the following: "In accordance with the instructions of the Court, any award of past physician, hospital or other medical expenses incurred in the past is to be made regardless of whether those expenses have been paid." Docket No. 72. Counsel for the plaintiff suggested additional language to the effect that the Court's answer in no way implied that medical bills had been paid or had not been paid; however, this language was not added and counsel for plaintiff ultimately did not object.

After deliberations, the jury found that the defendant did directly and proximately cause injury to plaintiff Brenda Sue Donley and therefore proceeded to Question No. 2, where they awarded Brenda Sue Donley $22,625.49 in physician, hospital and other medical expenses incurred in the past, and $10,000.00 in physician, hospital or other medical expenses to be incurred in the future. However, the jury found that the defendant did not directly and proximately cause any injury to Alexander Donley. Therefore, the jury did not reach the question of damages with regard to Alexander Donley.

## II. Discussion

The plaintiffs argue that the jury's verdict with regard to Brenda Sue Donley is inadequate in light of uncontroverted evidence of past pain and suffering, past loss of enjoyment of life, future

4

pain and suffering and future loss of enjoyment of life. The plaintiffs also argue that the jury's verdict with regard to Alexander Donley is inadequate in light of uncontroverted evidence of past pain and suffering, past mental anguish and past loss of parental consortium. Further, plaintiffs argue that the jury's verdict was inconsistent when it found the defendant liable for Brenda Sue Donley's injuries, but not for Alexander Donley, who was a passenger in her automobile during the accident.

The defendant responds that the plaintiffs waived their right to move for a new trial on grounds of an inconsistent verdict because no motion was made before the discharge of the jury. In addition, the defendant argues that an award of special damages and an award of zero general damages for Brenda Sue Donley is not inconsistent, and that there is no reason to upset the defense verdict with respect to the claims of Alexander Donley.

A.   Waiver of Right to Object to Verdict

    1.   In General

Under Fourth Circuit law, a party does not waive its right to object to an inconsistent special verdict under Rule 49(a) if such party did not object prior to the jury's discharge. See Ladnier v. Murray, 769 F.2d 195, 198 n.3 (4th Cir. 1985)(finding that a party's Seventh Amendment rights are implicated by entry of a judgment based on inconsistent special interrogatories, and therefore, requiring an objection before discharge could "usurp the

jury's function")(footnote affirmed); <u>Figg v. Schroeder</u>, 312 F.3d 625, 643 (4th Cir. 2002)(recognizing authority to the contrary, but affirming on Seventh Amendment grounds <u>Ladnier</u>'s rejection of pre-discharge objection requirement).  Further, the Fourth Circuit has held that a general verdict does not require a pre-discharge objection from a party where the jury enters general verdicts on several claims, but fails to submit a verdict on one of the claims. <u>Figg</u> at 634 (finding that Seventh Amendment rationale against requiring pre-discharge objection "applies with even greater force in this situation").  However, the Fourth Circuit has found that, where a jury has entered a Rule 49(b) general verdict with interrogatories, failure to object to any asserted inconsistencies in the response to a jury interrogatory constitutes a waiver of a party's right to seek a new trial.  <u>Austin v. Paramount</u>, 195 F.3d 715, 725 (4th Cir. 1999); <u>White v. Celotex</u>, 878 F.2d 144, 145 (4th Cir. 1989)(per curiam)(distinguishing <u>Ladnier</u> as an application of Rule 49(a) rather than 49(b)).  In <u>Austin</u> and <u>White</u>, the court reasons that the requirement for objection under Rule 49(b) promotes efficiency of trials by "allowing the original deliberating body to reconcile inconsistencies without the need for another presentation of the evidence to a new body."  <u>Austin</u> at 725; <u>White</u> at 146.[2]

_____

[2] Presumably there are no Seventh Amendment concerns on a Rule 49(b) verdict because the jury ultimately gives a general verdict, thus maintaining the defendant's right to trial by jury even though

2.  <u>Categorizing the Verdict</u>

In light of the Fourth Circuit's Rule 49 jurisprudence, a party's right to move for a new trial can turn on whether the verdict in a particular case is a general verdict, a special verdict or a general verdict with interrogatories.  Unfortunately, the definitions of these verdict terms can be imprecise and appear to have been inconsistently applied by courts.  <u>See e.g.</u>, <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 724 (4th Cir. 1999)(court uses terms interchangeably to discuss a single verdict form: "The district court provided the jury with a <u>special verdict</u> form to be completed during its deliberations.  The form directed the jury to answer numerous <u>interrogatories</u> and to return a <u>general verdict</u> for either Austin or Paramount on each claim." (emphasis added)); <u>Jarvis v. Ford Motor Co.</u>, 283 F.3d 33, 56 and 67 (2d Cir. 2002)(majority finds a particular verdict form to be a general verdict with interrogatories while dissent finds the form to be a special verdict); <u>Mason v. Ford Motor Co., Inc.</u>, 307 F.3d 1271, 1274 (11th Cir. 2002)("Little difference may exist between answers to jury questions posed under rule 49(a) -- which yields law -- and answers to written interrogatories under rule 49(b) which are accompanied by forms for a general verdict.").

_____

certain interrogatories may be inconsistent; in contrast, under Rule 49(a), the court makes the ultimate legal conclusions based on the facts found by the jury, thus potentially stripping the defendant of his right to trial by jury where facts do not lead to a single legal conclusion.

General verdicts and special verdicts are often distinguished on the ground that a general verdict requires a jury to articulate no factual findings other than the ultimate finding of which party prevails while a special verdict requires a jury to make only specific factual findings, and requires the judge to make the ultimate legal conclusions based on those facts. See e.g., Mason, 307 F.3d at 1274. However, it is not always easy to distinguish questions of law, questions of fact and mixed questions of law and fact. See Williams v. Taylor, 529 U.S. 362, 408-409 (2000) (recognizing similarities between questions of fact and mixed questions of law and fact). The usefulness of definitions based on a fact/law dichotomy is further challenged by the Rule 49(b) general verdict with special interrogatories, which is a hybrid between the special verdict and the general verdict, and therefore, necessarily combines specific factual findings and ultimate legal conclusions. Fed. R. Civ. P. 49(b).

In addition, a general verdict may be phrased as a question of fact, but nevertheless function as a general verdict. See e.g., Ramos v. Davis & Geck, Inc., 224 F.3d 30, 32 (1st Cir. 2000) (finding that a verdict form in a discrimination case asking whether the jury found that "the defendant constructively discharged the plaintiff . . . without just cause because of his age in violation of [statute prohibiting age discrimination in employment]" was essentially the same as asking the jury whether it

found the defendant guilty or not guilty).  A special verdict, on the other hand, "gives a written finding for each issue, leaving the application of the law to the judge."  <u>Id.</u>

Although the Fourth Circuit specifically defines a general verdict as a verdict "by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions," <u>Figg</u> at 642 n.12 (quoting <u>Black's Law Dictionary</u> (7th ed. 1999)), it has not delineated the distinguishing features between a Rule 49(a) special verdict, a Rule 49(b) general verdict with interrogatories, and a traditional general verdict, except to note that interrogatories accompanying a Rule 49(b) verdict need not cover all issues in a case.  <u>See</u> <u>Crumpe v. Bowman</u>, 53 F.3d 328, 328 n.2 (4th Cir. 1995)(per curiam).

Turning to other circuits, some courts use a district court's jury instructions to assist in determining the nature of the jury's verdict.  For example, the Second Circuit finds that "where a jury is instructed to apply legal principles and assign liability, 'the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form, and Rule 49(a) therefore does not apply.'"  <u>Jarvis v. Ford Motor Co.</u>, 283 F.3d 33, 56 (2d Cir. 2002)(citing <u>Lavoie v. Pac. Press & Shear Co.</u>, 975 F.2d 48, 54 (2d Cir. 1992)(applying Rule 49(b)).  Similarly, Wright & Miller's <u>Federal Practice and Procedure</u> refers to jury instructions when defining a Rule 49(b) general verdict with

interrogatories: "Since the rule requires the trial judge to give whatever explanation or instruction seems necessary to enable the jury both to answer the interrogatories and to render a general verdict, it will be necessary to give a general charge just as is given when only a general verdict is to be returned . . . The jury must be instructed to answer the interrogatories in writing and also to render a general verdict." Wright & Miller, <u>Federal Practice and Procedure</u> § 2512.

### 3. <u>Application of Verdict Categories</u>

Having reviewed Fourth Circuit law and additional authority, this Court now turns to its own jury instructions, verdict form, and post-verdict judgment in the above-styled action in order to clarify that the jury did, in fact, return a general verdict with special interrogatories.

As this Court explained in its jury instructions, only two issues remained for the jury to determine in the above-styled action: (1) what injuries to the plaintiffs were proximately caused by the accident and (2) the amount of damages the plaintiffs were entitled to recover. <u>See</u> Jury Instructions, Docket No. 71 at p. 3. This Court then proceeded to instruct the jury on the law, explaining the essential elements the plaintiffs had to prove and explaining legal concepts such as "proximate cause" and "preponderance of evidence." <u>Id.</u> at 3-5. Further, the Court explained how the jury should calculate damages if the jury

determined that "the plaintiffs [were] entitled to recover." Id. at 5. Thus, this Court's jury instructions, which provide guidance on issues of law, are consistent with a general verdict rather than a special verdict.

However, this Court also instructed the jury regarding the way in which damages would be broken down on the verdict form. Thus, for Brenda Sue Donley, this Court instructed the jury to consider medical expenses incurred in the past, medical expenses reasonably certain to be incurred in the future, bodily injuries sustained, nature and effect of past and future pain and the degree of permanency of her injuries. Id. at 6. Also, for Alexander Donley, this Court instructed the jury to consider past medical expenses, injuries sustained, past pain, loss of enjoyment of life and loss of parental consortium. Id. at 7. This Court further advised the jury as to how it should proceed in determining each of the above categories of damages. Accordingly, this Court not only instructed the jury on how to render a general verdict, but also how to answer certain interrogatories concerning damages. See Wright & Miller, Federal Practice and Procedure § 2512. Thus, this Court's instructions were tailored for a Rule 49(b) general verdict with interrogatories.

Moving now to consider the actual verdict form used in this action, this Court notes that the form asks one ultimate question determining liability per plaintiff, and then follows the question

with a break-down of damages. Thus, the jury was first required to determine whether the defendant had "directly and proximately caused any injury to" Brenda Sue Donley before moving to consider which damages applied. See Verdict Form, Docket No. 73, Questions 1 and 2. This format was repeated for Alexander Donley. See Verdict Form, Docket No. 73, Questions 3 and 4. While the question concerning Brenda Sue Donley and the question concerning Alexander Donley were stated as questions of fact, both questions essentially ask for a general verdict in favor of the plaintiff or defendant. See Ramos, 224 F.3d at 32. Thus, the verdict form cannot be considered a special verdict form.

However, as indicated above, the verdict form's break-down of damages (e.g., past medical, future medical, past pain, future pain, etc.) required the jury to present a figure for each category of damages used to determine the total damages awarded. While each category of damages is presented in the form of an imperative rather than an interrogatory (i.e., "past medicals" rather than "what are past medicals?"), this Court finds that such imperatives function as questions in that they require the jury answer whether damages should be awarded in each category listed. See Cunningham v. M-G Transp. Servs., Inc., 527 F.2d 760, 762 (4th Cir. 1976)(recommending that interrogatories be put in the form of questions, but recognizing statements can be interrogatories).

Finally, this Court's Judgment in a Civil Case entered on January 31, 2005, simply indicates that the jury "rendered its verdict on January 12, 2005, in favor of Plaintiff, Brenda Sue Donley." In other words, this Court was not required to make any findings of law as would be necessary with a special verdict. Instead, the judgment recognized that the jury had performed the task of determining who had prevailed and who had not prevailed.

After considering this Court's jury instructions, the jury verdict form and the final judgment entered in this action, this Court finds that the jury delivered a general verdict with special interrogatories regarding damages. Thus, Rule 49(b) is applicable to this action, and the plaintiffs' failure to object to any asserted inconsistencies constitutes a waiver of the plaintiffs' right to seek a new trial. <u>Austin</u>, 195 F.3d at 725 (4th Cir. 1999); <u>White</u>, 878 F.2d at 145 (4th Cir. 1989)(per curiam) (distinguishing <u>Ladnier</u> as an application of Rule 49(a) rather than Rule 49(b)). Accordingly, the plaintiffs' motions for a new trial based on an inconsistent verdict must be DENIED.

B.   <u>Motion for New Trial</u>

Even if the plaintiffs had made a timely objection to the verdict as to either plaintiff, this Court finds that the verdict entered was not inconsistent. Further, this Court finds that the plaintiffs are not entitled to a new trial pursuant to Rule 59 and West Virginia law.

13

Federal Rule of Civil Procedure 59(a) provides in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

In contrast to a motion for judgment as a matter of law in which the courts cannot consider the credibility of the evidence, in considering the motion for new trial "[a] court can exercise discretion to grant a new trial if the verdict, even though supported by enough evidence to defeat the motion for [renewed judgment as a matter of law], is against the weight of the evidence." Taylor v. Home Ins. Co., 777 F.2d 849, 855 (4th Cir. 1986) (citations omitted).

Substantive damages issues are governed by state law when a case is tried in federal court pursuant to the court's diversity jurisdiction. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 437, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996); Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 280 (4th Cir. 1999). Under West Virginia law, a damage award is inadequate only when a sum is "so low that under the facts of the case reasonable men cannot differ about its inadequacy." Faris v. Harry Green Chevrolet, Inc., 572 S.E.2d 909, 911 (W. Va. 2002). Further, when weighing evidence in an alleged inadequate verdict case, a court must "view the evidence in a light most favorable to the defendant and grant all favorable

inferences." Id. Nevertheless, if a jury verdict has no internal logical consistency or if it does not comport with instructions, the verdict should be reversed. Adkins v. Chevron, USA, Inc., 485 S.E.2d 687, 695 (W. Va. 1997).

1. Award for Brenda Sue Donley

This Court must reject the plaintiffs' argument that the jury's verdict for Brenda Sue Donley was inconsistent because it awarded damages for past and future medical expenses, but awarded no damages for past and future pain and suffering and no damages for past or future loss of enjoyment of life. See Adkins at 695 (finding consistent a verdict awarding damages for future pain, but denying damages for past pain). To the contrary, this Court finds that a verdict awarding medical expenses while denying damages for pain and suffering is not inherently inconsistent. See e.g., Keiffer v. Queen, 189 S.E.2d 842, 845 (W. Va. 1972)(non-permanent injuries difficult to measure and generally will not be found inadequate); Penney v. Praxair, Inc., 116 F.3d 330, 333 (8th Cir. 1997)(holding that damages fairly compensated plaintiff and were not inconsistent when considered adequate).

Further, the plaintiffs' argument that the jury's verdict for Brenda Sue Donley was inadequate is without merit. West Virginia has long held that "there is no market price or monetary equivalent for pain and suffering and for injuries of a nonpermanent nature, and that a jury award for these will generally not be disturbed

15

because of the small amount awarded." <u>Keiffer</u>, 189 S.E.2d at 845. Further, this Court finds that the record supports the jury's verdict.

In determining Brenda Sue Donley's damages for pain and suffering, the jury considered the plaintiff's own testimony regarding subjective symptoms. The plaintiff testified under cross examination that she had suffered from neck pain and muscle spasms before the underlying accident and that she had been prescribed muscle relaxers. R. at 38. Under direct examination, the plaintiff admitted that she jumped 15 feet out of a window and was diagnosed with a stiff back before the accident. R. at 21-22. Brenda Sue Donley also made conflicting statements, giving the jury grounds to find her testimony to be not completely reliable. For example, Brenda Sue Donley testified that Linda Goodwin, another passenger involved in the accident, complained of pain after the accident. R. at 34-35. However, the accident report completed by the responding officer indicated that Ms. Goodwin suffered no injury. R. at 35.

In addition to Brenda Sue Donley's own testimony, expert testimony offered at trial provided further ground for the jury's ultimate verdict. The plaintiffs' witness, William D. Grubbs, B.S., D.C., testified that he had treated Brenda Sue Donley for back and neck pain and that her pain was caused by the automobile accident. R. at 143-144. However, Dr. Grubbs acknowledged that

Brenda Sue Donley also had a degenerative condition caused by aging rather than the accident. Id. Dr. Grubbs further testified that Brenda Sue Donley had experienced some isolated incidents of pain and spasms before the accident. R. at 144.

Plaintiffs' expert, Thomas J. Romano, Ph.D., M.D., diagnosed Brenda Sue Donley with chronic myofascial pain syndrome and claimed that this condition resulted from the underlying accident. However, under cross-examination, Dr. Romano indicated that he had made his diagnosis after just a single examination, and without having reviewed Brenda Sue Donley's medical records. R. at 177-78. Further, Dr. Romano relied on Brenda Sue Donley's own version of events in order to complete his diagnosis. R. at 178.

Finally, the defendant's expert, Francis T. Ferraro, M.D., testified that he had reviewed Brenda Sue Donley's medical record, performed an independent medical examination, and found that she had a relatively full range of motion in her neck, though she complained of neck pain. R. 213. Dr. Ferraro testified that when he performed a grip test on Brenda Sue Donley, the results were "indicative of a patient not making a good effort." R. at 216. In addition, Dr. Ferraro testified that he reviewed reports regarding x-rays that were taken before and after the underlying accident, and that the reports diagnosed similar findings. R. 220-21. Finally, Dr. Ferraro disagreed with earlier expert testimony that

disc herniation was in any way conclusive as to cause of Brenda Sue
Donley's injury.  R. at 222.

In light of the above testimony, this Court finds that the
plaintiffs' request for a new trial regarding Brenda Sue Donley
must be denied.

### 2.  Award for Alexander Donley

This Court also must reject plaintiffs' contention that the
jury's verdict regarding Alexander Donley was inconsistent or
inadequate.  Plaintiffs state that "the evidence at trial
unquestionably established that the emergency medical bills
incurred or paid on behalf of plaintiff Alexander Donley were the
result of his injuries from the motor vehicle accident."  Pls.'
Resp. at 6.  However, the plaintiffs do not point to a single place
in the record to support their conclusory claim.  Plaintiffs cite
no medical records, they point to no testimony from treating
physicians and they offer no objective evidence indicating that the
jury verdict was in error.

After independently reviewing the record for some indicia of
support for the plaintiffs' assertion, this Court finds the
plaintiffs' claim is without merit.  For example, the accident
report simply states that the "back seat passenger" was taken to
the hospital "to be checked" and does not indicate that any party
was injured.  See Pls.' Ex. 1, Accident Report.  In addition, the
record of Alexander Donley's visit to Wheeling Hospital after the

18

accident supports the jury's verdict. According to this record, only Brenda Sue Donley stated that her son suffered from a head ache and neck pain. In contrast, the record clearly states that Alexander Donley, himself, denied having either a headache or any pain with neck movement. Pl. Alexander Donley's Ex. 3, Wheeling Hospital Emergency Room Medical Records at 9.

The plaintiffs argue that an emergency room bill from Wheeling Hospital demonstrates that the jury's verdict was inconsistent. This Court disagrees. The bill offered into evidence shows only that Alexander Donley was charged $77.50 for an x-Ray, $57.75 for the emergency room, and an additional $167.25 as an emergency room fee. Pl. Alexander Donley's Ex. 5, Wheeling Hospital Emergency Room Bill at 16. The bill does not indicate whether these expenses were directly caused by the defendant's negligence, or even whether the x-ray and emergency visit were necessary. When compared with the hospital records showing that only Brenda Sue Donley claimed Alexander Donley experienced pain, this Court finds that the bill does not demonstrate the jury verdict to be inconsistent or inadequate.

The only other support this Court could find for the plaintiffs' contention comes from the subjective testimony of Brenda Sue Donley, herself, who testified that her son had neck pain after the accident, some nightmares and that he was x-rayed in what seems to have been a precautionary measure. R. at 24-25.

However, Brenda Sue Donley admits that she is not sure whether the nightmares are the result of the accident or simply unrelated bad dreams. R. at 24. Ultimately, plaintiffs' evidence does not "unquestionably establish" that the defendant directly and proximately caused injury to Alexander Donley. To the contrary, this evidence, or lack thereof, supports the jury's finding of no direct or proximate causation. Accordingly, the plaintiffs' motion for a new trial with regard to Alexander Donley must be denied.

In sum, after review of the trial record, this Court finds that the jury had a substantial basis in evidence for their verdict awarding Brenda Sue Donley damages for past medical expenses and future medical expenses, and denying damages for pain and suffering. Further, this Court finds the jury had a substantial basis for determining that the defendant did not directly or proximately cause any injury to Alexander Donley. This Court does not believe that the general verdict with special interrogatories was inconsistent, or that damages ultimately awarded indicate that the jury was misled or confused in any way.

## III.  Conclusion

For the reasons stated above, plaintiffs' motions for new trial based on a theory of inconsistent verdict must be DENIED because both plaintiffs failed to timely object to the Rule 49(b) general verdict with special interrogatories, and the plaintiffs failed to demonstrate that the verdict was, in fact, inconsistent.

In addition, plaintiffs' motions for new trials based on inadequate damages must be DENIED because the jury verdict was based on substantial evidence, was consistent and did not provide for a sum so low that reasonable persons could differ as to its adequacy.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Denial of a post-trial motion for a new trial leaves the pre-existing judgment unaffected, and therefore, entry of a new judgment pursuant to Rule 58 is not required. <u>Marre v. United States</u>, 38 F.3d 823, 826 (5th Cir. 1994).

DATED:   May 12, 2005


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE